BEAM, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 54. I agree with all of the majority opinion except for the decision to reverse the chancery court's contempt ruling and award of attorney's fees. Therefore, I concur in part and dissent in part.
 

 ¶ 55. As the majority reiterates, the need for continued, monthly, child-support payments during the pendency of an appeal long has been recognized by this Court.
 
 See
 
 Maj. Op. ¶ 40 (citing
 
 Petersen v. Petersen
 
 ,
 
 238 Miss. 190
 
 ,
 
 118 So.2d 300
 
 , 304 (1960) ). The reason is obvious. Children have to eat and have a roof over their heads, and were a stay on child-support payments allowed-as a matter of course-in every case where a party challenges their court-ordered support obligation by appeal,
 those affected foremost by the wait would be the children.
 

 ¶ 56. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than [this Court]."
 
 Varner v. Varner
 
 ,
 
 666 So.2d 493
 
 , 496 (Miss.1995) (quoting
 
 Morreale v. Morreale
 
 ,
 
 646 So.2d 1264
 
 , 1267 (Miss.1994) ). A contempt citation is proper only when the alleged contemnor willfully and deliberately has ignored the order of the court.
 
 Mizell v. Mizell
 
 ,
 
 708 So.2d 55
 
 , 64 (Miss. 1998). Failure to comply with a court order is prima facie evidence of contempt.
 
 McIntosh v. Dep't of Human Servs.
 
 ,
 
 886 So.2d 721
 
 , 724 (Miss. 2004). To rebut a prima facie showing of contempt, a person must show an inability to perform the order, that failure to comply was not willful, or that the order was ambiguous or uncertain.
 
 Evans v. Evans
 
 ,
 
 75 So.3d 1083
 
 , 1087 (Miss. Ct. App. 2011). "Contempt is an issue of fact to be decided on a case-by-case basis.
 
 R.K. v. J.K.
 
 ,
 
 946 So.2d 764
 
 , 777 (Miss. 2007). Resolution of a contempt matter by and large turns upon credibility of the contemnor, the assessment of which lies within the province of the trial judge sitting as trier of fact.
 
 Mizell
 
 ,
 
 708 So.2d at 64
 
 .
 

 ¶ 57. Here, the chancery court found that McKinney willfully chose not to abide by the court's child-support order because, based on McKinney's testimony, he had received advice from his mother, financial advisor, and attorney not to abide by the court's order. I find no manifest error in the chancery court's ruling.
 

 ¶ 58. While this Court has recognized that advice from counsel may constitute a factor for the trial court's consideration in its determination as to whether the party willfully ignored the order of the court, it has never held or suggested that it constitutes an automatic defense.
 
 [10]
 

 See generally
 

 R.K.
 
 ,
 
 946 So.2d at 777-78
 
 (chancellor acted within her discretion but not holding father in contempt when he relied upon advice of counsel in stopping child support payments);
 
 see also
 

 Mizell
 
 ,
 
 708 So.2d at 64
 
 (same).
 

 ¶ 59. As a matter of practice and common sense, courts should be wary of such claims.
 
 United States v. Remini
 
 ,
 
 967 F.2d 754
 
 , 758 (2d Cir. 1992), helps illustrate why.
 

 ¶ 60. There, the Second Circuit rejected the claim by a defendant convicted of criminal contempt that a "good faith reliance on advice of counsel is a defense to criminal contempt." At trial and on appeal, the defendant argued the Supreme Court's decision in
 
 Cheek v. United States
 
 ,
 
 498 U.S. 192
 
 ,
 
 111 S.Ct. 604
 
 , 610-11,
 
 112 L.Ed.2d 617
 
 (1991), which held that a good faith misunderstanding of the law is a defense in a tax prosecution.
 
 Remini
 
 ,
 
 967 F.2d at 757
 
 . The Second Circuit found the defendant's reliance on
 
 Cheek
 
 misplaced.
 

 Id.
 

 at 758
 
 . The Second Circuit noted that
 
 Cheek
 
 first reiterated the general rule that "ignorance of the law or mistake of law is no defense to criminal prosecution[, which] is deeply rooted in the American legal system."
 

 Id.
 

 (quoting Cheek,
 
 498 U.S. at 199
 
 ,
 
 111 S.Ct. 604
 
 ). But
 
 Cheek
 
 recognized an exception to this rule in the tax prosecution before it, due to the complexity of tax law and proliferation of tax statutes and regulations that sometimes have made it difficult for average citizens to know and comprehend.
 

 Id.
 

 Distinguishing
 
 Cheek
 
 , the Second Circuit said: "There is nothing so complex about
 the law of contempt as to set it apart from the rest of the criminal law to which 'ignorance is no defense.' "
 

 Id.
 

 ¶ 61. The Second Circuit also noted
 
 United States v. Ryan
 
 ,
 
 402 U.S. 530
 
 , 533,
 
 91 S.Ct. 1580
 
 , 1582,
 
 29 L.Ed.2d 85
 
 (1971), as an analogous example in support of its reasoning for rejecting the defendant's claim.
 
 Remini
 
 ,
 
 967 F.2d at 757-58
 
 . The
 
 Ryan
 
 Court said:
 

 [W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order ... prior to review of that order, and with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal.
 

 Ryan
 
 ,
 
 402 U.S. at 533
 
 ,
 
 91 S.Ct. 1580
 
 .
 

 ¶ 62. The same principle must apply in child-support matters for the reasons expressed above. Here, the chancery court's new child-support order, entered on April 27, 2016, was not uncertain or ambiguous, as was the support order at issue in
 
 McKnight v. Jenkins
 
 ,
 
 155 So.3d 730
 
 (Miss. 2013), cited to by the majority.
 
 See
 
 Maj. Op. ¶ 47. Nor was McKinney incapable of complying with the court's order, as the record clearly illustrates. McKinney simply chose not to do so.
 

 ¶ 63. And this forced Hamp to have to file a motion for contempt on June 30, 2016. It was not until after the fact that McKinney then sought and obtained a supersedeas bond under Mississippi Rules of Appellate Procedure. 8(a), approved by the chancery clerk on July 14, 2016, which, as the majority finds, was not a proper measure.
 

 ¶ 64. That McKinney continued to abide by a previous support order is of no moment. McKinney became subject to the chancery court's new support order, which the record illustrates he willfully and deliberately disregarded.
 

 ¶ 65. For these reasons, I would not contradict the chancery court's discretion on this issue. Finding no manifest error in the chancery court's contempt ruling, I would affirm that ruling and the chancery court's award of attorney's fees.
 

 KING, J., JOINS THIS OPINION.
 

 That McKinney also relied on his mother's and his financial advisor's advice need not be seriously entertained-except to say that it likely exacerbated the chancellor's reason for rejecting McKinney's excuse.